1  TUCKER ELLIS LLP
   Matthew I. Kaplan (SBN 177242)
2  matthew.kaplan@tuckerellis.com
   Susan L. Mizer (SBN 225832)
3  susan.mizer@tuckerellis.com
   515 South Flower Street
4  Forty-Second Floor
   Los Angeles, CA 90071-2223
5  Telephone:    213.430.3400
   Facsimile:    213.430.3409
6
   Attorneys for Defendant
7  THE GREAT LAKES BREWING CO., erroneously sued as
   GREAT LAKES BREWING COMPANY
8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11 TI BEVERAGE GROUP, LTD,          Case No. CV:12-02899-JFW (JCGx)

12          Plaintiff,               Hon. John W. Walter

13                                   **MEMORANDUM OF POINTS AND
                                     AUTHORITIES IN SUPPORT OF**
14      v.                           **MOTION TO DISMISS FOR LACK
                                     OF PERSONAL JURISDICTION AND**
15                                   **IMPROPER VENUE OR,
                                     ALTERNATIVELY, TO TRANSFER**
16 GREAT LAKES BREWING
   COMPANY, and DOES 1 – 10, inclusive
17                                   Date:        July 23, 2012
          Defendants.               Time:        1:30 p.m.
18                                   Courtroom:   16

19                                   [Filed concurrently with Notice of Motion
                                     and Motion, Declarations of Diane M.
20                                   Jacquinot and Kami Marquardt and
                                     [Proposed] Order.]
21

22

23

24

25

26

27

28

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

# TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL BACKGROUND OF THIS DISPUTE ................................... 2

III.  TI BEVERAGE HAS THE BURDEN OF ESTABLISHING
JURISDICTION IN THIS COURT........................................................... 7

IV.  THERE IS NO PERSONAL JURISDICTION OVER GLBC IN
CALIFORNIA ........................................................................................... 8

    A.    General Jurisdiction ....................................................................... 8

    B.    Specific Jurisdiction ...................................................................... 9

         1.    "Purposeful direction".......................................................... 10

         2.    "Arising out of forum-related activities" ........................... 14

         3.    Reasonableness.................................................................... 16

V.   BECAUSE VENUE IS IMPROPER HERE, THE COMPLAINT
MUST BE DISMISSED OR TRANSFERRED TO AN
APPROPRIATE VENUE ......................................................................... 18

VI.  CONCLUSION........................................................................................ 19

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

i

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for Multilingual Multicultural Educ. v. Garcia,*
    2011 WL 2532478 (N.D. Cal. June 24, 2011)........................................................18

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.,*
    551 F.2d 784 (9th Cir. 1977) ....................................................................................7

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
    223 F.3d 1082, (9th Cir. 2000) .................................................................................8

*Boschetto v. Hansing,*
    539 F.3d 1011 (9th Cir. 2008) ..................................................................................7

*Brayton Purcell LLP v. Recordon & Recordon,*
    606 F.3d 1124 (9th Cir. 2010) .............................................................................7, 10

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ........................................10

*Calder v. Jones,*
    465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) ......................................10, 14

*Cascade Corp. v. Hiab-Foco AB,*
    619 F.2d 36, (9th Cir. 1980) ...................................................................................13

*CollegeSource, Inc. v. AcademyOne, Inc.,*
    653 F.3d 1066, 1079 (9th Cir. 2011) .......................................................................17

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,*
    557 F.2d 1280 (9th Cir. 1977) ..................................................................................7

*Dole Food Co. v. Watts,*
    303 F.3d 1104, (9th Cir. 2002) ...............................................................................11

*Douglas Furniture Co. of Cal., Inc. v. Wood Dimensions, Inc.,*
    963 F. Supp. 899, (C.D. Cal. 1997).........................................................................13

*Edberg v. Neogen Corp.,*
    17 F.Supp.2d 104, (D. Conn., 1998) .......................................................................16

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)...............................................................8

ii

LaImanage\013013.000018 803154

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) .......................................... 8

*International Shoe Co. v. Washington,*
 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) ................................................. 8, 9

*Jenkins Brick Co. v. Bremer,*
 321 F.3d 1366, 1371-1372 (11th Cir. 2003) ......................................................... 18

*King v. Am. Family Mut. Ins. Co.,*
 632 F.3d 570, (9th Cir. 2011) .................................................................................. 8

*Lake v. Lake,*
 817 F.2d 1416, (9th Cir. 1987) .............................................................................. 10

*Mavrix Photo Inc. v. Brand Technologies, Inc.,*
 647 F.3d 1218, (9th Cir. 2011) ................................................................................ 9

*Menken v. Emm,*
 503 F.3d 1050, (9th Cir. 2007) .............................................................................. 14

*Milliken v. Meyer,*
 311 U.S. 457, 61 S. Ct. 339, 85 L. Ed. 278 (1940) ................................................. 8

*NuboNau, Inc. v. NB Labs, Ltd.,*
 2012 WL 843503 (S.D. Cal., 2012) ....................................................................... 16

*Panavision Int'l, L.P. v. Toeppen,*
 141 F.3d 1316 (9th Cir. 1998) ................................................................................. 7

*Pebble Beach Co. v. Caddy,*
 453 F.3d 1151 (9th Cir. 2006) ................................................................................. 7

*Schwarzenegger v. Fred Martin Motor Co.,*
 374 F.3d 797 (9th Cir. 2004) ......................................................................... passim

*Sher v. Johnson,*
 911 F.2d 1357, (9th Cir. 1990) .............................................................................. 10

*Sinatra v. National Enquirer, Inc.,*
 854 F.2d 1191, (9th Cir. 1988) .............................................................................. 16

*Tuazon v. R.J. Reynolds Tobacco Co.,*
 433 F.3d 1163, (9th Cir. 2006) ................................................................................ 9

*WarnerVision Entm't Inc. v. Empire of Carolina, Inc.,*
 101 F.3d 259, 260 (2d Cir. 1996) .......................................................................... 12

TUCKER ELLIS LLP

Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

iii

TABLE OF AUTHORITIES

LaImanage\013013.000018 803154

*Woodke v. Dahm,*
  70 F.3d 983, 985 (8th Cir. 1995) ............................................................................ 18

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
  433 F.3d 1199, (9th Cir. 2006) .................................................................. 10, 11, 13

**Statutes**

15 U.S.C. § 1051(a)(l) .................................................................................................. 12

15 U.S.C. § 1051(d)(1)-(2) .......................................................................................... 12

15 U.S.C. § 1057(c) ...................................................................................................... 12

15 U.S.C. § 1063(b) ...................................................................................................... 12

28 U.S.C. § 1391(b) ............................................................................................... 18, 19

28 U.S.C. § 1391(c) ...................................................................................................... 18

28 U.S.C. § 1404(a) ...................................................................................................... 19

28 U.S.C. § 1406 .................................................................................................... 18, 19

**Rules**

Fed. R. Civ. P. 4(k)(1)(A) .............................................................................................. 7

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

iv

TABLE OF AUTHORITIES

## I.   INTRODUCTION

Defendant The Great Lakes Brewing Co. ("GLBC") does not conduct business in California. It is a microbrewery based in Cleveland, Ohio, that also operates a brewpub in Cleveland. Great Lakes beer is available throughout the Great Lakes region and parts of the mid-Atlantic coast region, but it is not available in California or anywhere west of the Mississippi River. Thus, GLBC targets none of its marketing west of the Mississippi.

GLBC has no California employees, offices or assets and pays no California taxes. From its website, GLBC sells only non-beer merchandise such as one type of hoodie, a t-shirt, posters, a pint glass and the like with NOSFERATU ornamentation and in most cases the Great Lakes logos ("Non-Beer Merchandise"). Only four sales of Non-Beer Merchandise were billed to California addresses for amounts totaling less than $34.00 (there were actually five shipments to California addresses for product totaling less than $53.00). And at least one of those California sales was apparently to the Plaintiff (*see*, Complaint, ¶ 4).

Despite this virtually nonexistent California presence, Beverly Hills based plaintiff TI Beverage Group, Ltd. ("TI Beverage") is attempting to force GLBC to defend itself in this Court, thousands of miles from its home. This is unfair and improper. GLBC has insufficient contacts with California to establish personal jurisdiction in this Court, and the Federal venue statutes required this matter to have been filed elsewhere. However, TI Beverage refused GLBC's offer to stipulate to a transfer of this action during the course of the parties' required meet and confer under the Local Rules. TI Beverage based its refusal on the fact that GLBC's counsel sent correspondence to it in California which TI Beverage inaccurately characterizes as "cease and desist" letters, but the letters merely notify TI Beverage that GLBC has prior use rights in the NOSFERATU mark, which is not a communication that can form the basis of personal jurisdiction.

Accordingly, this Court should dismiss Plaintiff's Complaint.

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

## II.   FACTUAL BACKGROUND OF THIS DISPUTE

GLBC is a corporation organized under the laws of the State of Ohio.  GLBC was opened in 1988 as the first microbrewery in the State of Ohio and, as such, is an award-winning brewer of lagers and ales.  GLBC presently produces over 100,000 barrels of its various styles of beer annually.  In addition, GLBC operates a brewpub in Cleveland, Ohio that also serves food and a number of GLBC's pub-exclusive beers.  Marquardt Dec. at ¶¶ 2, 3.

In at least as early as 1990, GLBC first began using the mark NOSFERATU in connection with an imperial red ale beer that was promoted and sold in GLBC's brewpub in Cleveland, Ohio.  Marquardt Dec. at ¶ 7.

By about 2003, GLBC began bottling and selling the NOSFERATU beer as a seasonal beer offered for sale between September and November.  Marquardt Dec. at ¶ 8. The labeling for the NOSFERATU beer has remained essentially the same since that time.  *Id.*

GLBC was not aware of TI Beverage, Michael Machat or Vampire Brands, LLC in about 1990 when it originally adopted the name NOSFERATU for an imperial red ale.[1] Marquardt Dec. at ¶ 23.  Nor was GLBC aware of TI Beverage, Michael Machat or Vampire Brands, LLC when it began bottling and distributing the NOSFERATU beer as a seasonal beer in 2003 and created the labeling and packaging for that beer.  *Id.*

GLBC filed a trademark application for NOSFERATU for "beer" at the U.S. Patent and Trademark Office ("USPTO") on June 30, 2011.  Marquardt Dec. at ¶ 24.

---

[1] Mr. Machat is TI Beverage's counsel in this action and is also its CEO and President. Vampire Brands, LLC is the owner of the VAMPIRE marks asserted in the Complaint and TI Beverage is the exclusive licensee of those marks.  *See* Complaint at ¶¶ 6(a), 9. The Complaint does not state whether TI Beverage has the exclusive right to bring an action for trademark infringement under the licensing agreement thereby calling into question whether there is subject matter jurisdiction as to the Complaint.  This issue would need to be explored further if this action proceeds without joining Vampire Brands, LLC.

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

2

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1   Some months later, GLBC learned that Mr. Machat's intent-to-use application for

2   NOSFERATU for "Distilled Spirits; Spirits and liqueurs; Wine; Wines and fortified

3   wines" was blocking registration of GLBC's trademark application for NOSFERATU at

4   the USPTO. *Id.*

5        GLBC discovered that Mr. Machat had not actually used the NOSFERATU mark

6   in commerce. Marquardt Dec. at ¶ 25. Accordingly, GLBC's counsel wrote to Mr.

7   Machat on December 9, 2011 and February 20, 2012, advising him of GLBC's superior

8   rights in the NOSFERATU mark for beer going back to well before 2003 and asking him

9   to abandon his intent-to-use application for NOSFERATU. *Id.*; Jacquinot Dec., Exs. 3, 4.

10       GLBC never heard anything further from TI Beverage's owner and counsel, Mr.

11  Machat, regarding the 9 Dec 2011 and 20 Feb 2012 correspondence requesting that the

12  application for NOSFERATU be voluntarily withdrawn in view of GLBC's prior use of

13  NOSFERATU dating back to at least as early as 2003. Marquardt Dec. at ¶ 25. On April

14  3, 2012, TI Beverage filed this Complaint as a pre-emptive strike with no advance

15  warning or effort to resolve the matter amicably.[2]

16       At paragraph 5 of the Complaint, TI Beverage alleges that GLBC has been selling

17  a beer under the NOSFERATU brand and that NOSFERATU is a synonym for the

18  generic word vampire:[3]

19

20  [2] This is not the first time TI Beverage has filed a trademark infringement action in this
    Court. The Court's records indicate numerous such cases including, but not limited to: *TI*
21  *Beverage Group, Ltd. v. Cold Spring Brewing Company*, Case No. CV: 11-04847 (C.D.
    Cal. 2011); *TI Beverage Group, Ltd. v. Vampt Beverage Corp.*, Case No. CV: 10-09044
22  (C.D. Cal. 2010); *TI Beverage Group, Ltd. v. Hot Topic, Inc.*, CV: 10-02089 (C.D. Cal.
    2010); *TI Beverage Group, Ltd. v. Marwal Art Industries, Inc.*, Case No. CV: 10-02734
23  (C.D. Cal. 2010); *TI Beverage Group, Ltd. v. OMNI Consumer Products, LLC*, CV-
    05936 (C.D. Cal. 2009). These complaints are variations on one complaint that is slightly
24  revised and re-filed over and over in this Court and appear to be part of an aggressive
25  strategy to claim exclusive use of vampire related concepts in commerce.

26  [3] In the original intent-to-use application Mr. Machat filed with the USPTO, he advised
    the USPTO that the English translation for the word "NOSFERATU" was not vampire,
27  but was "the undead." Jacquinot Dec. at ¶ 13, Ex. 9.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
LaImanage\013013.000018 803154

1   Defendant GREAT LAKES has been selling a beer branded with the name

2   NOSFERATU which is a synonym for Vampire.  Upon information and

3   belief, Defendant GREAT LAKES has a picture of a Vampire prominently

4   appearing on its front beer label, and references vampires throughout its

5   marketing so that if any member of the public was unaware that Nosferatu

6   was another word for Vampire, the beer label artwork and promotional

7   material make it plain and obvious.

8   Complaint at ¶ 5.

9       At paragraph 6 of the Complaint, TI Beverage alleges that it owns a number of

10   Vampire brands (*i.e.*, "Plaintiff's Family of Vampire Brands") and also intends to release

11   a VAMPIRE PALE ALE at some future date:[4]

12   Plaintiff TI BEVERAGE GROUP has been marketing both alcoholic and

13   non-alcoholic beverages under the following brand names for many years,

14   including: VAMPIRE (for wines - US Trademark Registration No.

15   2263907); CHATEAU DU VAMPIRE (for wines - US Trademark

16   Registration No. 3502158); VAMPIRE VINEYARDS (for wines - US

17   Trademark Registration No. 3418138); VAMPYRE (for vodka - US

18   Trademark Registration No. 3082097); VAMP (energy drink - US

19   Trademark Registration No. 2681906); DRACULA (for wine - US

20   Trademark Registration No. 3319536) and recently VAMP H20 (water - US

21   Trademark Registration No. 3895288).  Plaintiff plans to release a beer

22   under the brand name VAMPIRE PALE ALE.  Plaintiff has further plans to

23   expand its product line and come out with a NOSFERATU branded

24   alcoholic beverage, and has a pending trademark application with the

25   _____

26   [4] There is no evidence on TI Beverage's websites that it presently sells a VAMPIRE
     PALE ALE product.  However, there is evidence that a number of parties—aside from TI
27   Beverage—sell a beer product including a VAMPIRE formative. *See* Jacquinot Dec. at ¶
     12.
28

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco
TUCKER ELLIS LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
LaImanage\013013.000018 803154

1    USPTO for that mark (Trademark Application Serial No. 77906512) . . ..

2    Complaint at ¶ 6.

3        At paragraph 14, TI Beverage alleges that "Defendants' marketing, sales and

4    distribution of beer bearing the NOSFERATU mark and having the VAMPIRE trade

5    dress infringed upon and continues to infringe upon PLAINTIFF'S Family of Vampire

6    marks and trade dress."

7        TI Beverage's VAMPIRE trade dress pertaining to its various Family of Vampire

8    marks is shown in the picture below:



In contrast, GLBC's NOSFERATU beer is shown in this picture below:

LaImanage\013013.000018 803154

Marquardt Dec. at ¶ 8, Ex. 1.  Notably, GLBC's NOSFERATU beer product includes a prominent reference to GREAT LAKES as well as a distinctive image.

    The Complaint against GLBC contains four claims:

-     Count I - Violation Of Lanham Act 15 U.S.C. §1114
-     Count II - Violation Of Lanham Act 15 U.S.C. §1125
-     Count III - Unfair Competition - Common Law, And California Business & Professions Code §§ 17200 et seq.
-     Count IV - Unfair Competition - Common Law, California Business & Professions Code §§ 17500 et seq.

    Each of these counts is predicated upon GLBC's sale of NOSFERATU *beer*.  In particular, TI Beverage alleges that consumers will believe that the NOSFERATU beer originates from the same source as TI Beverage's VAMPIRE WINE, VAMPIRE

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

6

Lalmanage\013013.000018 803154

1  VODKA, DRACULA wine,[5] VAMP H20, or its soon to be released VAMPIRE PALE

2  ALE. *See, e.g.*, Complaint at ¶ 30.

3

4  **III.  TI BEVERAGE HAS THE BURDEN OF ESTABLISHING JURISDICTION**

5  **IN THIS COURT.**

6  In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the

7  plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v.*

8  *Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008).  Where the defendant's motion is based on

9  written materials rather than an evidentiary hearing, the plaintiff need only make a prima

10  facie showing of jurisdictional facts to withstand the motion to dismiss. *Brayton Purcell*

11  *LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010).  However, a plaintiff

12  cannot "simply rest on the bare allegations of its complaint." *Schwarzenegger v. Fred*

13  *Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Amba Mktg. Sys., Inc. v.*

14  *Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).  While a court must assume

15  uncontroverted facts in a complaint are true, "[it] may not assume the truth of allegations

16  in a pleading which are contradicted by affidavit," *Data Disc, Inc. v. Sys. Tech. Assocs.,*

17  *Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977), but resolves factual disputes in the plaintiff's

18  favor. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

19  Where, as here, no federal statute authorizes personal jurisdiction, the district court

20  applies the law of the state in which the court sits. Fed. R. Civ. P. 4(k)(1)(A); *Panavision*

21  *Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  California's long-arm

22  statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process

23  requirements, so the jurisdictional analyses under state law and federal due process are

---

[5] TI Beverage's earliest trademark priority date for DRACULA based on filings with the U.S. Patent and Trademark Office ("USPTO") is August 10, 2004.  GLBC, however, was using NOSFERATU in commerce well before that date, giving it superior rights to use that mark on beer.  If TI Beverage truly believes there is confusion in the marketplace resulting from TI Beverage's use of DRACULA on wine and GLBC's use of NOSFERATU on beer, TI Beverage should cease using DRACULA on wine.

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

the same. *Schwarzenegger*, 374 F.3d at 800-01. Thus, for a court to exercise personal

jurisdiction over a nonresident defendant consistent with due process, that defendant must

have "certain minimum contacts" with the relevant forum "such that the maintenance of

the suit does not offend 'traditional notions of fair play and substantial justice.'"

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95

(1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278

(1940)).

## IV.    THERE IS NO PERSONAL JURISDICTION OVER GLBC IN CALIFORNIA

### A.    General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-

country) corporations to hear any and all claims against them when their affiliations with

the State are so 'continuous and systematic' as to render them essentially at home in the

forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851,

180 L.Ed.2d 796 (2011). For general jurisdiction to exist, a defendant must engage in

"continuous and systematic general business contacts," *Helicopteros Nacionales de

Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984), that

"approximate physical presence" in the forum state, *Bancroft & Masters, Inc. v. Augusta

Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "The standard is met only by

'continuous corporate operations within a state [that are] thought so substantial and of

such a nature as to justify suit against [the defendant] on causes of action arising from

dealings entirely distinct from those activities.'" *King v. Am. Family Mut. Ins. Co.*, 632

F.3d 570, 579 (9th Cir. 2011) (alterations in original) (quoting *International Shoe*, 326

U.S. at 318).

To determine whether a nonresident defendant's contacts are sufficiently

substantial, continuous, and systematic, the Ninth Circuit considers their "[l]ongevity,

continuity, volume, economic impact, physical presence, and integration into the state's

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

8

1  regulatory or economic markets." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163,

2  1172 (9th Cir. 2006).  The standard for general jurisdiction "is an exacting standard, as it

3  should be, because a finding of general jurisdiction permits a defendant to be haled into

4  court in the forum state to answer for any of its activities anywhere in the world."

5  *Schwarzenegger,* 374 F.3d at 801.

6  TI Beverage has not satisfied the "exacting standard" necessary to establish general

7  jurisdiction.  GLBC has no offices or staff in California, no distributors in California, is

8  not licensed to do business in California, has no registered agent for service of process in

9  California, does not pay state taxes in California and does not hold or own assets in

10  California.  Marquardt Dec. at ¶¶ 13-15; 32-37.

11  Moreover, the existence of an interactive website, without more, does not establish

12  general jurisdiction:

13     To permit the exercise of general jurisdiction based on the accessibility in

14     the forum of a non-resident interactive website would expose most large

15     media entities to nationwide general jurisdiction.  That result would be

16     inconsistent with the constitutional requirement that "the continuous

17     corporate operations within a state" be "so substantial and of such a nature

18     as to justify suit against [the nonresident defendant] on causes of action

19     arising from dealings entirely distinct from those activities."

20  *Mavrix Photo Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, (9th Cir. 2011) (citing

21  *International Shoe*, 326 U.S. at 318).

22  The exercise of general jurisdiction over GLBC would be improper given the

23  paucity of GLBC's contacts with California.

24  **B.   Specific Jurisdiction**

25  The Ninth Circuit analyzes specific jurisdiction under a three-prong test:

26     (1) The non-resident defendant must ***purposefully direct his activities*** or

27     consummate some transaction with the forum or resident thereof; or perform

28     some act by which he ***purposefully avails himself*** of the privilege of

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

TUCKER ELLIS LLP

9

1  conducting activities in the forum, thereby invoking the benefits and

2  protections of its laws; (2) the claim must be one which arises out of or

3  relates to the defendant's forum-related activities; and (3) the exercise of

4  jurisdiction must comport with fair play and substantial justice, *i.e.* it must

5  be reasonable.

6  *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.

7  1987) (emphases added)).

8      TI Beverage bears the burden of satisfying the first two prongs of the test. *Sher v.*

9  *Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). However, as shown below, it cannot

10  establish that GLBC's actions satisfy either prong, so specific jurisdiction does not exist

11  in this case. Moreover, this case presents the required "compelling case" in which

12  exercise of jurisdiction would not be reasonable. *See Burger King Corp. v. Rudzewicz*,

13  471 U.S. 462, 476-78, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985) (defendant bears burden of

14  establishing a "compelling case" that exercise of jurisdiction would be unreasonable).

15      **1.  "Purposeful direction"**

16      The first prong of the test is sometimes referred to as the "purposeful availment"

17  prong. *See Schwarzenegger*, 374 F.3d at 802. "Despite its label, this prong includes both

18  purposeful availment *and* purposeful direction." *Yahoo! Inc. v. La Ligue Contre Le*

19  *Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (emphasis added). "It

20  may be satisfied by purposeful availment of the privilege of doing business in the forum;

21  by purposeful direction of activities at the forum; or by some combination thereof." *Id.*

22  "A purposeful availment analysis is most often used in suits sounding in contract. A

23  purposeful direction analysis, on the other hand, is most often used in suits sounding in

24  tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted).

25      Purposeful direction is evaluated using the three-part "*Calder*-effects" test, taken

26  from *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). *See*

27  *Brayton*, 606 F.3d at 1128. Under this test, "the defendant allegedly must have (1)

28  committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm

TUCKER ELLIS LLP
Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

10

1    that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433

2    F.3d 1199, 1206 (internal quotes omitted).

3         Even if TI Beverage claims that GLBC's maintenance of a website having an

4    online store with negligible sales to California constituted an intentional act expressly

5    aimed at California, there is no evidence that GLBC caused harm that it knew was likely

6    to be suffered in California by TI Beverage, Michael Machat or Vampire Brands, LLC.

7    *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) ("[T]he 'express

8    aiming' requirement … is satisfied when 'the defendant is alleged to have engaged in

9    wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the

10   forum state.'").

11        In fact, GLBC was never aware of TI Beverage, Mr. Machat, Vampire Brands,

12   LLC or any Vampire brand of wine products when it adopted the name NOSFERATU as

13   a pub-exclusive beer over twenty years ago in about 1990. Nor was GLBC aware of TI

14   Beverage, Mr. Machat, Vampire Brands, LLC or the various Vampire marks when it

15   began bottling the NOSFERATU red ale as a seasonal beer in 2003 available from

16   September through November. Marquardt Dec. at ¶ 23; Jacquinot Dec. at ¶¶ 13, 14, Exs.

17   9, 10. GLBC has been selling a limited number of single items of merchandise bearing

18   the NOSFERATU mark through its online merchandise store on its website,

19   www.greatlakesbrewing.com, since 2003, but it was not aware of Mr. Machat, Vampire

20   Brands, LLC or the various Vampire marks at that time.

21        GLBC filed an application to federally register NOSFERATU for "beer" at the

22   USPTO on June 30, 2011. Some months later, GLBC learned that Mr. Machat's intent-

23   to-use ("ITU") application for NOSFERATU for "Distilled Spirits; Spirits and liqueurs;

24   Wine; Wines and fortified wines" was blocking registration of GLBC's application for

25   NOSFERATU at the USPTO. Marquardt Dec. at ¶ 24. Discovering that Mr. Machat had

26   no actual common law rights in NOSFERATU and, indeed, had failed to perfect an

27   earlier ITU application for NOSFERATU by the use of the mark in commerce, it was

28   perfectly appropriate for GLBC, through its counsel, to advise Mr. Machat of its

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

11

longstanding prior use of NOSFERATU for beer and request that he abandon his pending NOSFERATU application in view of GLBC's superior common law rights.[6]  Marquardt Dec. at ¶¶ 23-25.

GLBC was not aware of Mr. Machat's relation to TI Beverage and Vampire Brands, LLC until the Complaint was filed.  Given that none of Mr. Machat, TI Beverage, or Vampire Brands, LLC presently has rights in the mark NOSFERATU for any goods, GLBC continues to offer its single item NOSFERATU Non-Beer Merchandise on its online merchandise store.  GLBC's continued online availability of NOSFERATU Non-Beer Merchandise could not possibly harm Mr. Machat, TI Beverage, or Vampire Brands, LLC in California, since none has intellectual property rights to the NOSFERATU mark.  Marquardt Dec. at ¶ 28.  Moreover, these online sales do not now and have never included the sale of beer—*the product alleged to have caused the harm to Plaintiff, TI Beverage, in the Complaint*.

Further, GLBC was not aware of the various VAMPIRE marks identified in the Complaint until the Complaint was filed.  Accordingly, GLBC could not possibly have offered for sale or sold NOSFERATU Non-Beer Merchandise online with the knowledge that harm would be suffered by TI Beverage, Mr. Machat or Vampire Brands, LLC in

---

[6] Ordinarily, trademark registrants cannot register a trademark until they have used the mark in commerce. *WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 260 (2d Cir. 1996); *see also* 15 U.S.C. § 1051(a)(l).  An ITU application, however, allows a person not yet using a mark to file an anticipatory application for registration on the basis of an intent to use the mark in the future.  Once the USPTO issues a "notice of allowance" of the ITU application pursuant to 15 U.S.C. § 1063(b), the applicant has six months, absent extension, to begin using the mark in commerce.  *WarnerVision*, 101 F.3d at 260; *see also* 15 U.S.C. § 1051(d)(1)-(2).  If the applicant files a statement of use within the proscribed timeframe, the mark is registered and the date the ITU application was filed becomes the applicant's constructive-use date. *See* 15 U.S.C. § 1057(c).  This gives the applicant priority-of-use over anyone who adopts the mark after the constructive-use date. *See id.*  TI Beverage's constructive use date of January 6, 2010 (assuming it perfects its ITU application) does not beat GLBC's prior use date of NOSFERATU going back to at least as early as 2003.

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1   California.  Marquardt Dec. at ¶ 29.  Even had GLBC been aware of the various

2   VAMPIRE marks, it could not have reasonably anticipated that TI Beverage would claim

3   that there is a likelihood of confusion in the marketplace resulting from GLBC's use of

4   NOSFERATU on *beer* and TI Beverage's use of its various VAMPIRE marks on *wine*

5   *and vodka. See* Marquardt Dec. at ¶ 31.

6       Moreover, the letters from GLBC's counsel to Mr. Machat (which TI Beverage

7   wrongly characterizes in the Complaint as cease and desist letters) do not establish

8   personal jurisdiction.  *See, e.g., Yahoo! Inc.*, 433 F.3d 1199, 1208; *Cascade Corp. v.*

9   *Hiab-Foco AB*, 619 F.2d 36, 38 (9th Cir. 1980); *Douglas Furniture Co. of Cal., Inc. v.*

10  *Wood Dimensions, Inc.*, 963 F. Supp. 899, 903 (C.D. Cal. 1997) ("If any attempt by an

11  intellectual property holder to put an alleged wrongdoer on notice forced the property

12  holder to submit to the jurisdiction of the alleged wrongdoer's forum, an intellectual

13  property owner would be forced to file an action in his own jurisdiction in order to avoid

14  the threat of being haled before a court in another, possibly distant state").  TI Beverage

15  cannot rely on the letters as the basis for asserting personal jurisdiction.

16      Further, these letters are wholly unrelated to TI Beverage's claim in the Complaint

17  that GLBC's use of NOSFERATU *on beer* infringes the "Family of Vampire Brands."

18  *See* Complaint at ¶ 6(b).  These letters were written for the purpose of notifying Mr.

19  Machat (the owner of the intent-to-use application for NOSFERATU) that GLBC had

20  common law rights in that mark going back to at least 2003 for "beer" so that Mr. Machat

21  would not attempt to perfect his ITU application by initiating the use of NOSFERATU in

22  commerce.  GLBC was not aware of the Family of Vampire Brands, TI Beverage,

23  Vampire Brands, LLC or Mr. Machat's relationship with any of the foregoing at the time

24  these letters were sent.  Marquardt Dec. at ¶¶ 28, 29.  Accordingly, there is no mention of

25  them in the letters.

26      There is simply no evidence here that GLBC intentionally directed activities at

27  California that it knew would harm TI Beverage—a company it had no knowledge of

28

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

13

1  until the filing of the Complaint—so as to satisfy the three-part *Calder* effects test. As

2  such, personal jurisdiction does not exist and the Complaint should be dismissed.

### 2.   "Arising out of forum-related activities"

4  The second prong of the specific jurisdiction test asks whether the claim arises out

5  of or relates to the defendant's forum-related activities. This involves a determination of

6  whether the plaintiff would not have been injured "but for" the defendant's conduct

7  directed toward the defendant in California. *Panavision Int'l*, 141 F.3d at 1322. Thus, TI

8  Beverage must show that it would not have been injured but for the sale of NOSFERATU

9  Non-Beer Merchandise from GLBC's online merchandise store into California. *See*

10  *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) ("Menken must show that he would

11  not have suffered an injury 'but for' Tomerlin's forum-related conduct").

12  With regard to the only allegation relating to personal jurisdiction in the

13  Complaint, TI Beverage alleges, on information and belief, that GLBC markets and

14  distributes beer in California:

> Defendant GREAT LAKES BREWING COMPANY, ("GREAT LAKES")
> is, upon information and belief, an Ohio Corporation based in Cleveland,
> Ohio. Upon information and belief, Defendant GREAT LAKES markets
> and distributes beer and various other products throughout the United States
> (including California and Los Angeles County). Defendant GREAT
> LAKES has in fact sold glassware into Los Angeles County and offers other
> products online to residents of Los Angeles.

22  Complaint at ¶ 4.

23  However, TI Beverage is wrong. The evidence presented through Ms. Marquardt's

24  Declaration unequivocally establishes that GLBC neither markets nor distributes beer—

25  including the NOSFERATU beer—in California. Marquardt Dec. at ¶¶ 10-15. GLBC

26  uses a distribution network to sell its NOSFERATU beer within thirteen states east of the

27  Mississippi River and the District of Columbia. Each distributor has a specified

28  geographic territory. Each of GLBC's distributors has a Sales and Distribution

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

14

Agreement with GLBC that prohibits the distributor from selling or supplying GLBC beer to any person outside of the distributorship defined territory or to a person that the distributor believes will sell or supply beer to a person outside the territory. *Id.* at ¶ 13.

TI Beverage's Complaint clearly identifies GLBC's sale of NOSFERATU beer (as opposed to Non-Beer Merchandise from the on-line store) as the source of its injury in California:

> 14.   ***Defendants' marketing, sales and distribution of beer*** bearing the NOSFERATU mark and having the VAMPIRE trade dress infringed upon and continues to infringe upon PLAINTIFF'S Family of Vampire marks and trade dress.
>
> 15.   ***If defendants are not stopped from marketing a beer*** under the name ***NOSFERATU*** (both with and without the VAMPIRE trade-dress), it is likely that consumers will continue to become confused about the source and origin of Plaintiff TI BEVERAGE GROUP's products, and mistakenly conclude that Plaintiff TI BEVERAGE GROUP's products is produced by Defendants or vice versa that Plaintiff produces Defendants' beer.
>
> 16.   Plaintiff TI BEVERAGE GROUP will soon be coming out with an ale branded as VAMPIRE. ***If defendants are not stopped from marketing a beer under the name NOSFERATU*** (both with and/or without the VAMPIRE trade dress), it is likely that consumers will become confused about the source and origin of Plaintiff TI BEVERAGE GROUP's VAMPIRE PALE ALE, and mistakenly conclude that Plaintiff TI BEVERAGE GROUP's VAMPIRE PALE ALE is produced by Defendants.

Complaint at ¶¶ 14-16 (these allegations are incorporated into each of Counts I-IV of the Complaint).

Moreover, GLBC's sale of merchandise bearing the NOSFERATU mark from its online merchandise store to California is negligible:

> The total dollar amount of sales of NOSFERATU products in California

15

LaImanage\013013.000018 803154

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1    from April of 2010 to present is as follows:

2    •    Shipped to CA:    $52.70.

3    •    Billed to CA:    $33.75.

4    The total number of online sales transactions of NOSFERATU products in

5    California from April of 2010 to the present is as follows:

6    •    Shipped to CA:    5 sales transactions.

7    •    Billed to CA:    4 sales transactions.

8    Marquardt Dec. at ¶ 20, 21.  Finally, it appears that at least some of those California sales

9    were orchestrated by TI Beverage itself.  *See* Complaint at ¶ 4 (alleging purchases of

10   glassware, not beer).  In *NuboNau, Inc. v. NB Labs, Ltd.*, 2012 WL 843503 (S.D. Cal.

11   2012), the defendant had completed a couple of internet sales in California, but the orders

12   were apparently placed by agents of the plaintiff.  The court held that "this kind of

13   orchestrated purchase cannot give rise to personal jurisdiction over [the defendant] in

14   California."  *NuboNau* at *3, citing *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191,

15   1195 (9th Cir. 1988) and *Edberg v. Neogen Corp.*, 17 F.Supp.2d 104, 112 (D. Conn.

16   1998).

17        TI Beverage's injury alleged in the Complaint results from the sale of

18   NOSFERATU beer.  That product is not offered or sold in California.  TI Beverage's

19   claim does not arise out of GLBC's minimal sales of merchandise on its online

20   merchandise store so as to satisfy the second prong of the specific jurisdiction test.  The

21   failure to satisfy this second prong of the test for personal jurisdiction is, by itself,

22   sufficient to warrant granting this Motion.

23        **3.    Reasonableness**

24        "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then

25   shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction

26   would not be reasonable."  *Schwarzenegger*, 374 F.3d at 802 (citations omitted).

27   Reasonableness is shown if personal jurisdiction would comport with fair play and

28   substantial justice.

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

16

LaImanage\013013.000018 803154

1   In determining whether jurisdiction is reasonable, the court considers seven

2   factors:

3   (1) the extent of the defendants' purposeful injection into the forum state's

4   affairs; (2) the burden on the defendant of defending in the forum; (3) the

5   extent of the conflict with the sovereignty of the defendant's state; (4) the

6   forum state's interest in adjudicating the dispute; (5) the most efficient

7   judicial resolution of the controversy; (6) the importance of the forum to the

8   plaintiff's interest in convenient and effective relief; and (7) the existence of

9   an alternative forum.

10   *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1079 (9th Cir. 2011).

11   Factors (1) , (2) and (7) would be the most significant factors considered here and

12   would lead to a compelling case that jurisdiction would not be reasonable in this Court.

13   As shown in detail, *supra*, GLBC has never interjected itself into California for the

14   purpose of selling NOSFERTU beer—the allegedly infringing product.  It is not

15   reasonable and would not comport with fair play and substantial justice to force GLBC to

16   defend a trademark infringement action in California based merely on negligible sales of

17   merchandise that does not include the allegedly infringing product (beer).

18   Moreover, GLBC is located in Ohio, its key witnesses are in Ohio and the

19   NOSFERATU beer is manufactured, bottled and packaged in the State of Ohio at

20   GLBC's brewing facilities.  Marquardt Dec. at ¶¶ 3-6, 9.  The burden on GLBC would be

21   substantial, since the key witnesses and documents are located in Ohio.  This is

22   particularly true since the Complaint itself is without legal merit as no one is likely to

23   confuse GLBC's use of the mark NOSFERATU on beer with TI Beverage's Family of

24   Vampire marks used on wine, spirits and water.  TI Beverage should prosecute its

25   Complaint in Cleveland if it believes it to have any merit.  The District Court for the

26   Northern District of Ohio is an alternative forum that could properly exercise jurisdiction

27   and has an actual relation to the events giving rise to TI Beverage's Complaint.

28

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

17

## V.   BECAUSE VENUE IS IMPROPER HERE, THE COMPLAINT MUST BE DISMISSED OR TRANSFERRED TO AN APPROPRIATE VENUE

The relevant general venue statute which governs here is 28 U.S.C. § 1391(b), which provides that civil actions may be brought "only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omission giving rise to the claim occurred ..., or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."  If an action is filed in the wrong venue, "[t]he district court ... shall dismiss, or if it be in the interests of justice, transfer such case to any district ... in which it could have been brought."  28 U.S.C. §1406(a).

For purposes of 28 U.S.C. § 1391(b)(1), a defendant resides in a judicial district where it is subject to personal jurisdiction.  *See* 28 U.S.C. § 1391(c).  As discussed above, GLBC is not subject to personal jurisdiction in California.  Accordingly, venue is improper under 28 U.S.C. § 1391(b)(1) and this action must be dismissed or transferred in accordance with 28 U.S.C. §1406(a).

Referring to 28 U.S.C. § 1391(b)(2), venue in this district is not proper because a substantial part of the events giving rise to TI Beverage's trademark infringement Complaint have not occurred in California.  Courts focus on the *defendant's* activities when evaluating whether a substantial part of the events took place in a particular forum.  *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-1372 (11th Cir. 2003); *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995); *Alliance for Multilingual Multicultural Educ. v. Garcia*, 2011 WL 2532478 (N.D. Cal. June 24, 2011) ("To determine whether a substantial part of the events giving rise to the claim occurred in the forum, the court first considers what acts or omissions by the defendants give rise to the plaintiffs' claims").

GLBC does not sell or offer to sell the NOSFERATU beer in California.  Nor is it manufactured, bottled, labeled or packaged in California.  *See* Marquardt Dec. at ¶¶ 7-17.  None of the events giving rise to the claims in the Complaint—the sale of beer—occurred in the Central District, let alone anywhere in California.  Venue, therefore, is not proper

Tucker Ellis LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

18

under 28 U.S.C. § 1391(b)(2), and the Complaint must be dismissed or transferred under 28 U.S.C § 1406(a).[7]

GLBC respectfully requests that the case be transferred to the Northern District of Ohio, Eastern Division, because that is the most appropriate district since it is the location of GLBC's headquarters, its brewery, documents and witnesses.  Personal jurisdiction thus exists over GLBC in the Northern District of Ohio, and it is the appropriate venue.[8]

## VI.   CONCLUSION

For the foregoing reasons, GLBC requests that the Court enter an order finding that it lacks personal jurisdiction over this action and that the Complaint be dismissed for lack of personal jurisdiction and improper venue and transferred to the District Court for the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a).

DATED:  June 20, 2012                         Tucker Ellis LLP


By:  _____
           Matthew I. Kaplan
     Attorneys for Defendant
     THE GREAT LAKES BREWING CO.,
     erroneously sued as GREAT LAKES
     BREWING COMPANY

---

[7] Alternatively, if the Court finds that venue is proper in the Central District of California, the case could be transferred under 28 U.S.C. § 1404(a) for the convenience of parties and witnesses and in the interest of justice.

[8] It is also fair to require TI Beverage to prosecute its infringement claims in the Northern District of Ohio since TI Beverage's Family of Vampire wines and spirits are available for purchase in that district on a number of websites including its own sites (www.vampire.com, www.vampirevineyards.com and www.vampyrevodka.com) and on www.amazon.com, (*see*, Jacquinot Dec. at ¶¶ 8-11), which TI Beverage contends is sufficient to confer personal jurisdiction on it in the Northern District of Ohio.

19

LaImanage\013013.000018 803154

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles.  I am over the age of eighteen years and not a party to the within entitled action.  My business address is 515 South Flower Street, Forty Second Floor Los Angeles, CA 90071.

On June 20, 2012, I served the foregoing document(s) described as MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUR OR, ALTERNATIVELY, TO TRANSFER on the interested party(ies) in this action as follows:

*[See Attached Service List.]*

( )   **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on that date following ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

( )   **BY OVERNIGHT DELIVERY**: I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed as noted below.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

( )   **BY FACSIMILE:** Based on agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below.  The telephone number of the sending fax machine was 213.430.3409.  The sending facsimile machine issued a transmission report confirming the transmission was complete and without error.  A copy of that report is attached.

(X)   **ELECTRONICALLY VIA ECF:** the above-entitled document to be served electronically through the United States District Court, Central District ECF website, addressed to all parties appearing on the Court's ECF service list.  A copy of the "Filing Receipt" page will be maintained with the original document in our office.

( )   **BY E-MAIL OR ELECTRONIC TRANSMISSION**: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

( )   **FEDERAL**: I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 20, 2012, at Los Angeles, California.

Anna Maria Dukeslaw

PROOF OF SERVICE

013013.000018 790596.1

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

<u>SERVICE LIST</u>

Michael Machatt
Machat & Associates PC
9107 Wilshire Boulevard, Suite 425
Beverly Hills, CA  90210
Michael@machatlaw.com
(310) 860-1833
(310) 860-1837

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

PROOF OF SERVICE

013013.000018 790596.1